We will hear argument first in Case No. 25-1006, T-Mobile v. Kaifi. Good morning. May it please the Court, Greg Costa from Gibson Dunn for T-Mobile. The parties did not agree to reward Kaifi for deceiving the Patent Office. The District Court erred in accepting that astonishing proposition. I want to stop you the way I expect you to stop. We have a jurisdictional question, a very serious jurisdictional question, at least in my view. Let me just tell you what I am exploring so that you know what you can focus on to at least help me. You have a declaratory judgment action. In a declaratory judgment action, the jurisdictional question turns into whether there would be jurisdiction, either federal question or here 1338, by looking at the mirror image suit. The mirror image suit is a contract action. The contract action, which we don't have to speculate about because we actually have it in the counterclaim, is you breached the contract. Then there would be two questions about that under the Dunn against Mitten and Gable factors. Is there necessarily a patent law question that has to be answered as part of the affirmative breach of contract claim, not defenses? And second, is that substantial? It seems to me there's a significant issue as to both of those components. Because as Judge Gilstrap, I think, ultimately decided the matter, the breach of contract claim can be whatever federal law may be. Here is what the parties here agreed to. It doesn't really matter whether the term survival would have a federal law meaning. Also, it's not actually a patent statutory term at all. Then finally, even if there were some federal question about survival, why really is that substantial? It's kind of all up to the parties to make their agreement. That was kind of a long story, but that's what I'm thinking about. Thank you, Your Honor. I appreciate you raising those concerns. And so I'll address both why this is a necessary patent question and why it raises substantial patent questions. So I agree with the declaratory judgment. You look at the mirror image. So we're talking about KIFI's affirmative contract claim. And their contract claim is that they're entitled to tripling their settlement because they argue their claim survived EPR. So the contract itself incorporates EPR, which, of course, is a patent law process. And the definition of survive, the meaning of whether it survives the EPR, itself raises patent law questions. That's the other side's argument. Our view is it's infused with questions about what does prosecution disclaimer before the patent office do during an EPR? What is inequitable conduct during the EPR due to the viability of a claim? Do you have any case law to support the theory that the term survives is a patent law term? We don't, and we don't think it is a patent law term or doctrine. That's KIFI's jurisdictional position. After they filed the motion to dismiss, they've now changed their position. So we don't agree that's the strongest basis, but there are these issues of inequitable conduct and these issues of prosecution disclaimer. I would point the court. The best case necessarily involves a patent issue is the Jang v. Boston scientific case. There, a contract said the defendant had to pay royalties as long as it sold an infringing product. That's all the contract said in the key language. That's a very straightforward situation where the affirmative claim necessarily required the determination of infringement. We don't have something like that, as far as I can tell. Well, in that case, there was an EPR process that resulted in invalidating the patent. And so the contract dispute was whether that obligation to pay a royalty for infringing products continued after the commencement of the EPR that later invalidated the patent. So it was really raising this question of what's the impact of the EPR on this contract language. Even though that contract didn't expressly incorporate EPR, here the contract does. And so the necessary element is even stronger here where EPR is part of the contract. On substantiality, whether there's inequitable conduct, whether there's prosecution disclaimer, is going to have a forward-looking effect on the enforceability of these claims in other litigation as well. So that distinguishes it from Gunn, where the Supreme Court said, well, that's just a backward-looking malpractice action. And whatever is decided in state court isn't going to affect the viability of this patent going forward. In the case of electronics, where we said the Federal Circuit doesn't have jurisdiction over that Walker process claim, which was premised on the attempted enforcement of a fraudulently procured patent. And we said that's not a Federal Circuit question. Right. It did end up coming back. As the court knows, there was a scheme of jurisdictional ping-pong. The court ultimately accepted jurisdiction. But there, that was a Walker process antitrust claim issue. Inequitable conduct goes to the core of the patent system. It goes to core issues of the duty of candor. The case within a case question. The case of inequitable conduct was within the larger case of the Walker process antitrust claim. So, I mean, we have to accept for the fact that we in a presidential opinion said that's not for the Federal Circuit. So, why wouldn't that equally map on to here, assuming that understanding the CONCAC term survives even has an element of inequitable conduct in there? Right. Well, it was an antitrust claim. The court has not extended it since. And obviously, the Fifth Circuit disagreed, and that resulted in the case coming back here. Am I wrong to think of that as being a case within a case situation, just as you have a case within a case situation here, where the case is, the real case is the breach of contract claim, but within that case is your theory of inequitable conduct? I agree it's a case within a case, but I think the case, the type of case, has a stronger connection here to core patent issues involving inequitable conduct, involving prosecution disclaimer and the scope of these claims going forward. When CAIFI during the EPR did a complete 180 on what it had argued to Judge Gilstrap in the Eastern District, and as a result, they completely changed the interpretation, the construction of the claims in a way that they would no longer be enforceable against T-Mobile because our technology prefers the outdoor network. In addition, they failed to submit and withheld from the Patent Office critical trial court documents that would have made clear in blinking neon lights that they were changing their position, they were doing a complete about-face. Those documents would be the Markman hearing transcript, the motion to strike an expert that Verizon put on, as well as the pretrial order. All of those documents would have shown that they were arguing in federal court that this was an intelligent process that allowed for an optimal choice between the indoor and outdoor network. Then when the Patent Office says, well, we have concerns about prior art because there's prior art that has that optimal connectivity, they do a complete 180, and in the Patent Office now say it requires automatic connection. As a procedural matter, what opportunities did you and or AT&T and or Verizon have to see what was going on in their submissions and to advise the examiner of your view if you had it that something bad was afoot? My understanding is we did not have that opportunity. You filed the re-exam request. Correct. Under the statute, if they file a statement and you get notice of it and have an opportunity to reply, is that? My understanding is the Patent Office did issue an office action initially rejecting all of the claims as obvious. We did initiate that process. But then after that initial office action was issued, my understanding is we did not have insight into the process. We did not know what they were submitting. They'll know what's better.  I mean, it's ex parte. So we did not have the ability, in my understanding, I could be wrong, but to submit those documents that would have revealed that they were doing a complete about face and misleading the Patent Office into thinking this was a consistent position they'd taken all along. The regulations impose a duty of candor and good faith that then specifically says you have to alert the Patent Office to any inconsistent positions on this issue of patentability. And so when you have a claim that there's an overwhelming case of inequitable conduct... Can I just... Yes, Your Honor. I think I know the answer to this, but I'm not so sure. So every time you talk about... It seems to me you have two fundamental points about federal law. One is this inequitable conduct. And that feels very much like a defense. And defenses don't count in deciding whether their affirmative contract claim comes within 1331 or 1338. Then the other one is what survival is. But first on the inequitable conduct, how do you get that into the jurisdiction of question? Because it's only their complaint, theoretical and then eventually actual, that counts. Because it does also go to survival, Your Honor. If a claim is infected with inequitable conduct and is rendered unenforceable, it in no way could survive. It can no longer be used in an infringement suit. And so that goes to... Wouldn't that always be true of the defense, contract defense against public policy or something like that? Any defense that is valid prevents the further assertion of the contract. Here I think, though, the claim itself. They're here saying our claim survived the EPR, so we're entitled to tripling our settlement. And so for them to show that it survived, they have to show that it emerged from EPR in a way that could have been used against my client in the infringement suit. This agreement was a proxy. It was a bet the parties were placing on whether what happened during the EPR... And if that's what our intent was, we don't have to talk about federal law at all. Admittedly, if they start talking about federal law, then that starts to be a problem for them. But as Judge Gilstrap's opinion, I think, indicates, they didn't have to talk about federal law. Well, first of all, in their brief now, they are saying on the merits, they are saying there's jurisdiction and they're talking about federal law. We think there's jurisdiction that's okay with them. I'm not sure what their position is. Right, they're trying to have it both ways. Look, there is a requirement of looking at the contract when you have this Christensen-type claim. It is a state law contract claim. And in deciding whether it necessarily raises a patent issue, a court has to look into what the claim would look like when it's litigated. And so that does require looking at it. And Judge Gilstrap's view, for the reasons we state in our briefs, it is not consistent with the commercial context. It's not consistent with the plain language. The parties here were trying to gauge whether these claims could have been used in a suit against our technology. And under both prosecution and disclaimer, and under inequitable conduct, they no longer could. Those are both patent law issues that means they can't meet their burden of showing it survived. So they are coming into court saying, we survived EPR. To do that, they have to show that it would be enforceable against our technology. And because it isn't enforceable against our technology because of their misconduct before the patent office, that does present important— You said in order to show survival, they had to prove it was enforceable against your technology. Correct. Whether there's infringement, how does that get to survival? Because that was the commercial context with Texas courts saying in a contract case, you need to look at the realities the parties were addressing. And the reality here was that this was being used as a gauge to determine if they still had an infringement suit against us. Let me ask you, I gather from looking at the papers that we have that there was never any real discussion during the settlement agreement negotiations or discussions about what survival meant. Is that correct? I don't know. Did the issue ever come up? The issue did come up. I don't know if there was ever talk about defining that term, but there is extensive extrinsic evidence. I thought there was discussion and was reflected in the footnotes of the settlement agreement, but not about claims that come out unamended. That there was some uncertainty about what happens if a claim is amended. Some amendments might count, some amendments might not. But I don't see evidence of discussion of the situation of claims that get confirmed without amendment. I can point the court to a draft, CAIFI's own words, their own draft. It's at 1968 in the record. And they had proposed language saying a claim would survive the EPR notwithstanding amendments as long as the amendment does not substantially alter the scope of the claim. There's also testimony from Ms. Dominguez, Mr. Rosenthal, who negotiated this, who said it was always a baseline understanding that there would not be a substantial alteration of the scope of the claims. And so the footnote you referenced, Your Honor, confirms that because there it's just talking about possible technical amendments. There was discussion about maybe changes to punctuation or grammar or maybe making a dependent claim into an independent claim. Those nonsubstantive amendments, even that was carved out from the party's agreement, which shows that the parties had an understanding that substantive agreements that would substantially alter the scope of the claims and that would no longer then be enforceable in the infringement lawsuit, that those claims would not survive and would not result in CAIFI being able to triple their settlement. It's just not reasonable. It doesn't make sense to say that the parties would have agreed that they could come out of EPR with a patent that was not enforceable in the lawsuit and they'd be entitled to triple their settlement. Wouldn't it make sense that we would agree to it? There's at least a reasonable interpretation we've offered, which means it's ambiguous, should get sent back for a trial. But if the view of Judge Gilstrap is affirmed, then there's no meeting of the minds because we would have never agreed to that. For those reasons, Your Honor, we would ask that the court reverse and enforce the contract as reflected by the realities of the party's negotiation. Thank you. And you'll get your rebuttal time back. Good morning, Your Honors. May it please the court, Philip Warwick for CAIFI. I'd like to start, if I may, by responding to counsel's last point and then dive into jurisdiction, which has been front and center. So on the last point, I heard counsel say that the point of all of this was to use the ex parte re-exam as a proxy for the strength of the infringement case. And as Your Honors know, that just doesn't make any sense. The Patent Office looks at patentability, not infringement, not enforceability. And for that matter, on the enforceability question, T-Mobile never made a case of but-for materiality as to patentability under Thereset. There are a lot of allegations of things being hidden or things being misrepresented, but no claim as to why that would affect patentability. The agreement was simple. The agreement was if any claim survives, at least an unamended claim survives, i.e., a re-exam certificate issues on confirming an unamended claim, then that's all it means. It was clear from the contract, but it's also clear as a matter of patent law, which brings me to jurisdiction. Now, as Your Honors know, we originally filed a motion saying there is no jurisdiction in this court. And that was our initial take. That was already a good three years into this dispute. I looked it up, and coincidentally, it was four years ago to this day that the re-exam certificate issued. Payment was to follow 30 days later, which it did not. So once the court deferred the issue to the merit stage, and here we are 16 months later, we took a closer look. We took a cue from the court and said, maybe there is a basis for jurisdiction. And we believe, respectfully, that there is. I'm not sure cue is the right understanding of there's enough here to think about. Let somebody else do it. Apologies, Your Honor. Fair enough. In any event, we took a close look. And respectfully, this is our position. This is a contract case. This is not a case in a case, as Judge Chun suggested. This is a Texas law contract case. But both parties agree, under Texas law, for certain terms, you can look to usage within the relevant industry. And for surviving an ex parte re-exam, that is a term that has a special meaning within patent law. How so? It's not even a patent statute term. How can that have a special patent law meaning, as opposed to being a term that, because it's a very useful, ordinary English language term to use, we and presumably other courts and probably parties have also used in an informal way. So, Your Honor, I think that the key is that the next agreement can use a different term. Anything the parties prefer. So, Your Honor, I would say that the reason it has a meaning is that the term is found throughout this court's and other courts' body of decisions. And the parties have disputed that in the briefs. And I'd like to note that T-Mobile initially cited five cases for why they think survives has a certain patent law meaning. They actually argue that in the brief, that there is a patent law meaning. We refuted that. We cited several of our own cases. Notably, this usually comes up in the intervening rights context. You have first an analysis. Did the claims survive re-exam, i.e., were they patentable? And then you look to whether they are substantially identical, such that you can get past damages. But that is, again, like something that runs through this court's jurisprudence. And it has a significant meaning going to the gun framework for other license agreements, settlement agreements that would use similar language. How often does this term get used in licensing or settlement agreements? This is the first time I've seen it. Your Honor, it's a great question. I don't have a great answer, and partially that's because these settlement agreements, as in this case, are generally confidential. So I don't have a great data set. Well, let's put it this way. Courts have not been asked to interpret the term survives in this sort of context before. So in terms of trying to establish whether this is a substantial federal issue or it has some significance to the patent federal system, one of the major inquiries is, will this decision affect numerous cases downstream? And at the moment, I don't see how that can be. So, Your Honor, I think the answer is we don't know how many agreements use this language. It could potentially be several. The fact that it's coming up for the first time, I think, if anything, this court should be the court to address that, not one of the regional circuits, because there is a meaning. We're looking at what is the effect of a proceeding at the USPTO. And respectfully, we would submit the federal circuit is best positioned and most appropriate to make that determination. Can I ask? I think Mr. Costa referred to, if I understood it right, the tendency of at least two other cases, maybe the ones against AT&T and Verizon, so that if it turned out that T-Mobile, in this case, won a victory on the interpretation and application of survival and part of that victory was a conclusion that amounted to inequitable conduct that actually would have an effect on other pending suits for this very patent. Help me understand that. Your Honor, I am not personally involved in those other suits. My understanding is that the suits against AT&T and Verizon are finally concluded at this point. I am not aware of any impact that a decision here could have on those matters. I would like to say in this matter, it's important to note we have made no concession that a different claim scope, even if that were later found to be the case in a claim construction, would result in a non-infringement finding. That's why I focused on the inequitable conduct aspect of it. Sure, and on inequitable conduct, there is, again, nothing in T-Mobile's brief that shows a but-for materiality problem as to patentability. What their argument really amounts to is an attack on the settlement agreement. They're saying there was some sort of fraudulent activity whereby we were induced to sign the settlement agreement and then you went and told the patent office something inconsistent with what you told the district court. On that, I think I asked Mr. Costa a question about the opportunities, if any, that existed for T-Mobile to follow what was going on during the re-exam and to poke its nose in, maybe if not by right, then at least to submit a piece of paper that the examiner might read. Can you help me understand that? Sure, so a few things, Your Honor. One, I would say the patent office has a regular practice of posting the developments of pending re-exams for the public so that anyone can see office actions and office action responses. In this case, I'll point out that the relevant office action response that led to the confirmation of the claims was filed after the settlement agreement was signed. So there wasn't, I think, anything... I guess I just would like to understand the process. So they submit a request for ex parte re-exam. Did you file a response at that point? At some point, the examiner must have granted the request because there is a live proceeding. And then, I think I'm just remembering 301 or 302 or whatever it is, that maybe after that you then get to file a statement saying, here's why there really isn't a substantial new question of patentability and that the examiner is required to send that response to the requester and give an opportunity to reply. I'm just trying to understand what in fact happened here. Sure. And what was posted online? Sure. So I can't 100% guarantee what was or was not posted online at the time. I know it's the typical practice that all of these papers are, barring some sort of confidentiality concern. And I apologize, I don't remember the exact sequence of the early filings. There were certainly the requests, the patent office eventually made a determination that there was a significant new question of patentability, which resulted in the proceeding starting. But the key document here, there was an office action. The office action issued prior to the agreement being signed in the district court. Rejection. Rejection, correct. Rejecting the claims in light of several pieces of prior art. The parties then, on the eve of trial, reached a settlement agreement in the district court, referencing this pending ex parte re-exam, which at the time there was this pending office action, which to the best of my knowledge anyone could have accessed and read through the USPTO's systems website. And then, I believe it was roughly a month after the agreement was signed, CHI-FI submitted its response to the office action. And that response to the first office action is what led to the confirmation of the claim. Some of them unamended, one was amended. That's all on the re-exam certificate. And a number of documents, I guess, are identified or pointed to by T-Mobile as the basis for its assertion that you asserted to the patent office an understanding of the crucial language in the claim, different from the one, now suddenly a narrower position. Does T-Mobile point to documents submitted to the patent office before the settlement agreement or after or both? I believe they only point to documents that were submitted after the agreement was signed, and counsel can certainly correct me if I'm mistaken about that. But I believe that's correct. Now, I mean, here what we're looking at, again… Have you taken the position that you did, in fact, take a narrower view of the scope of that claim language in the PTO than you did in front of the district court? No, Your Honor. We disagree with that assertion. And, in fact, in front of Judge Gilstrap, there was full briefing and also expert reports. For example, Appendix 32, 94 to 95, you can see some of our experts' report explaining why, in his technical view, these submissions to the USPTO as part of the re-exam were consistent with the representations to the district court. And part of that view is that, for example, this if-then-else logic that was cited to the USPTO, that was necessary, but it wasn't exclusionary. You had to have this logic, but you could have layers of the logic to consider other factors other than receiving the system ID of an indoor Wi-Fi system when making the determination of which network would be connected or switched. But the point being, this was never decided. Your Honor, the whole reason the settlement agreement was entered on the eve of trial was to avoid litigation. One of T-Mobile's lawyers in his declaration even said, we don't want to trade one litigation for another. But T-Mobile's counsel has taken the position today that the settlement agreement looked to the EPR for some sort of gauge of the strength of the claims, and then we would have to decide whether there would be infringement. That's the trial that we tried to avoid. It just doesn't make any sense. And again, we've been waiting a long time for this to be resolved. We do think there is a legitimate basis for jurisdiction under Texas contract law, looking to the usage of survives in patent law, which we believe is a significant... Let me just try to state precisely why I'm not sure that that is enough. When somebody files a state law cause of action, the question is, is there some path to prevailing on that cause of action that doesn't involve a determination of federal law? That's either 1331 or 1338 here, same thing. It's not enough to say there is a path that does involve federal law if there is also independently a path that doesn't involve federal law. And I take it more or less from... I mean, it seems to me quite possible, but also instantiated in Judge Gilstride's opinion that there is a path that does not require the determination of a federal law question. Namely, when I read the contract, thinking about the whole context, this term has got to mean something as incredibly simple, objective, not subject to dispute as does any of these claims get confirmed without amendment. And that's not a matter of federal law, but a matter of the objective intent of the agreement. And as long as there is that path, then a federal law question resolution is not necessary, which is, I think, the term in Gunn and probably Gable or Gable or whatever it is. And so even before getting to substantiality, that line that I've just been spinning out would suggest we don't have jurisdiction. Like, hell no. Thank you, Your Honor. So I would just say that our position is that Judge Gilstrap absolutely reached the correct result, and he did do that without reaching the patent law meaning of survives. I'll point out we did argue that. We argued that first in the motion to dismiss, and he disagreed there was a subtle meaning, and then we reiterated that at Appendix 3045 in the summary judgment briefing. Our view is Judge Gilstrap and this court, if it undertakes the analysis, should look to the patent law meaning of that term. That would be the proper analysis. So when analyzed properly under Texas contract law, you do have to grapple with this patent law question, which we argue is significant, about the meaning of survives. Would I be wrong in inferring from what you just said that if we conclude that we don't have jurisdiction and it goes to the Fifth Circuit, you will then inform the Fifth Circuit that you think the analysis that Judge Gilstrap adopted was incorrect? Well, as appellate courts frequently remind the bar, I review judgments, not opinions. And I guess I think that would apply equally there. If your position is that a federal law analysis is required for a sound contract interpretation, there isn't such an analysis in Judge Gilstrap's opinion. Well, I think the correct result was reached, we would argue, Your Honor, and that to the extent that that analysis wasn't done, that would not undermine the ability of the Fifth Circuit to affirm the judgment. Our argument is just that would be the proper analysis. If this court disagrees with us that patent law issues are not properly raised, we would actually suggest that the appropriate action would be to dismiss the appeal. The patent law issues are the only issues T-Mobile argues. But at minimum, if this court decides to transfer the appeal to the Fifth Circuit, we would ask respectfully that the court clarify in any opinion that view, that the patent law issues are not necessarily raised. Because again, that's the only basis that T-Mobile has raised in its arguments on appeal. If Your Honors have no further questions. Thank you. Thank you. Your Honor, I'm going to take one last stab at the jurisdictional question you're grappling with on necessary. I would point to Gunn. I mean, Gunn says that the patent law issue wasn't substantial, but Chief Justice Roberts does find it was necessary there in the malpractice action. Even though, you know, there's a theoretical possibility maybe the lawyer had told his client to pursue the proper action and the client said, I don't want you. I mean, there's always a theoretical possibility that the case is not going to turn on the patent law issue. But I think the necessary inquiry typically is going to look at, you know, have to get into the merits a little bit. You're going to have to look at the contract and see how the case would play out. So I guess I haven't remembered the detail. I thought maybe if Gunn, the reason that everybody agreed, because they kind of had to agree, that there was a patent law question there is that at a minimum the damages depended on a conclusion that if only the lawyer had not fouled up, we would have gotten this patent. And that is independent of whether there was fouling up. And that would involve a question, is this application patentable? Right. Well, the damages would have in that situation. But the court very well could have disposed of the case like Judge Gilstrap did here erroneously, without getting to those damages question, finding other reasons that weren't malpracticed. The point is there's always a theoretical possibility the patent law actually won't have to get decided. Judge Gilstrap did not follow contract interpretation in concluding there were no patent law issues infused in this case. And I think this discussion has shown that patent law issues permeate this discussion. And it would be inconsistent with this court's exclusive jurisdiction for the Fifth Circuit to be opining on whether there was inequitable conduct that renders these claims unenforceable going forward. To answer one of your questions, the AT&T case and the Verizon case did settle. But I'm referring to this patent is out there. There could be further litigation. Isn't patent expired or not? I don't have the date in front of me. Not long ago. It has a 2001 priority date. And even though there was an almost two year extension, we're well beyond that. I wanted to walk through the timeline. I think there was some confusion about that. So all the documents were. Expiration doesn't mean there aren't related damages. I wanted to walk through the timeline quickly. All the documents, the Markman hearing, the Daubert motion, the pre-trial order, all those occurred before the office action. Then the office action happens, raising this likelihood that they're not going to be able to get past EPR because of the prior art that was disclosing exactly what they were arguing to Judge Gilstrap. Then the settlement happens. After that point, I confirmed we did not have the ability at that point to go back to the PTO and monitor or make another submission. Because there's a provision in the settlement agreement saying you guys stay out. Right. I think this also is a matter of the patent office, but I'll defer to others on that. Then it issues. And they also argued, well, they haven't shown materiality. Clearly, we've shown at least a fact issue. I think it's as a matter of law we've shown that their inconsistency would have influenced the patent office because 65. We have this unusual interpretation of materiality that involves but-for costs. Right. And the but-for, the patent office would not have issued the reexamination certificate if it had known that in the district court they were arguing the exact same construction that the patent office recognized was in the prior art, which was this optimal connectivity, this intelligent selection, not the automatic selection. And for those reasons, Your Honor, the survives the EPR is not. At a minimum, we're entitled to a jury on that. Texas law says you have to look at the commercial context. And the parties clearly were contemplating that CAI-FI would fulfill their duties of candor and good faith. The other side says, oh, why would we want another trial? Because all the parties expected CAI-FI to honor its obligations under the regulations that this would be a pure test of whether the prior art rendered their claim obvious. And only because they did this complete switcheroo were they able to change that. And that should not be rewarded with a tripling of their settlement. Thank you, Your Honor. Thank you. Thanks to all parties. The case is submitted.